Yeah. Are we clear? Kwame, thank you. Always tough to be the last on the calendar. May it please the court. My name is Rachel Golick and this is my co-counsel Anjali Fiedler. We represent the appellant Gary Simpson. At this time, I'd like to reserve one minute for rebuttal. Okay. Today, my co-counsel and I will demonstrate that the district court entered numerous erroneous rulings in Mr. Simpson's 1983 action. In the interest of time, I will limit my discussion to the district court's erroneous application of Heck v. Humphrey to bar evidence that Sgt. Thomas initiated the altercation by punching Mr. Simpson without provocation. Ms. Fiedler will limit her discussion to the court's erroneous denial of Mr. Simpson's Batson-Edmondson motion. Now, as you know... I'm sorry. Batson and what? Batson-Edmondson motion, Your Honor, regarding the jury selection. Now, as you know, evidentiary rulings are generally reviewed for an abuse of discretion. However, this court reviews such rulings de novo when issues of law predominate. We respectfully request this court to review the Heck issue de novo because an issue of law predominates. Whether or not a district court may invoke Heck v. Humphrey for the purpose of excluding evidence at trial. The district court's application of Heck in this case contravened established judicial precedent in two important respects. First, Heck is not an evidentiary doctrine. Federal precedent establishes that district courts routinely use Heck for the purpose of deciding whether a 1983 plaintiff has a cognizable action. Not for the purpose of excluding evidence. Second, irrespective of the fact that Heck is not an evidentiary doctrine, Mr. Simpson's 1983 suit is not barred by Heck. Why shouldn't it be an evidentiary doctrine? I mean, it seems to be trying to sneak through the back door, assuming that Heck would be a problem. What you can't come through the front door with. Yes, Your Honor, I understand your point. However, essentially what happened here was that Mr. Simpson was allowed to bring his Section 1983 suit. But the most integral evidence to his case was barred from being brought forth at trial and brought before the jury. What was barred? And why was it most integral? Namely, what was barred, the most important aspect of the evidence that was barred, was evidence that Sergeant Thomas initiated this entire altercation that underlie Mr. Simpson's regulatory infraction for violating California Code of Regulations 3005C. By entering Mr. Simpson's cell, there was some testimony at trial that he used profanity with Mr. Simpson. However, the jury was not allowed to hear that Sergeant Thomas punched Mr. Simpson at the beginning of their discussion together without any provocation from Mr. Simpson whatsoever. The jury was only able to hear evidence starting with essentially when Mr. Simpson had his hands around Sergeant Thomas's neck. So he essentially was allowed to bring his suit but was not allowed to bring all the evidence in that made the suit worthy of bringing. Is self-defense a defense in the administrative action, the 115 action? Your Honor, the case law on that is not clear. As we noted in our 28-J letter that we submitted recently, the United States Supreme Court has not yet decided this issue of whether prisoners have a right to self-defense in prison disciplinary proceedings. However, the Seventh Circuit and this circuit have both spoken on this case somewhat recently. Now, I'd just like to point out as well that the regulation itself, California Code of Regulations 3005C, does not mention self-defense whatsoever, nor does it mention that a prisoner will forfeit fewer good time credits for a violation if they act in self-defense. And back to the precedent on this issue, in 1994, the Seventh Circuit decided Roe v. DeBruin, where a prisoner claimed deprivation of due process when he was denied the opportunity to raise self-defense as a complete defense in a prison disciplinary proceeding. The court held that prisoners do not have a fundamental constitutional right to raise self-defense in such proceedings and said that even, furthermore, that even a due process right clearly established in the criminal jurisprudence might not necessarily apply to prison disciplinary proceedings if such a right was inconsistent with the legitimate penological objectives of maintaining the prison system. So in that case, the court decided that self-defense would only encourage inmates to beget violence with more violence, undermining the legitimate goal of maintaining safety. So your position is that allowing him to use the self-defense claim in a case like this wouldn't necessarily imply the invalidity of his administrative conviction? Exactly, Your Honor. That's exactly what we're saying. And then again, in 2008, only a couple of months ago, a district court in this circuit applied the Roe analysis to a violation of Regulation 3005C, which is what Mr. Simpson was found guilty of violating, yes. That's a due process, right? And I guess we probably have to look to the regulation to determine whether or not there's a regulatory or statutory defense to that, right? I'm sorry, an ability to raise self-defense under this statute? Your Honor, as I noted before, California Code of Regulations 3005C does not mention self-defense, nor is there any precedent aside from Martin v. Tilton, which just came out recently, regarding the impact of self-defense on these types of crimes. It doesn't bar the use of self-defense in a case like this? I'm sorry? If a guard walks in and says, I've had it with you, see this gun? You're out of here. Is your argument that the prisoner doesn't have a right to defend himself? Your Honor, that is not our argument. While we understand that, it is our understanding that under Turner v. Safely, it is in the discretion of prison officials to promulgate the policies that are in the prison and to enforce those policies. And that means that the standards may be different in prison than they are outside of prison. So while in the prison context, the prison may restrict prisoners' self-defense, right to raise self-defense in order to discourage inmate violence, that doesn't mean that they are entitled to violate prisoners' self-defense, excuse me, prisoners' constitutional rights with impunity. So essentially, that they wouldn't be able to raise self-defense in the prison disciplinary proceeding itself, but evidence that Mr. Simpson in this case, for example, acted to defend himself, just shows how much the force used by Mr. Simpson was, or excuse me, Sergeant Thomas, was excessive. So essentially, the law does not clearly establish that Mr. Simpson could have even raised self-defense at his prison disciplinary proceeding. And Heck v. Humphrey specifically, excuse me, I'm sorry. Did he? Raise self-defense? At his disciplinary proceeding, he did make a statement stating that he was acting to defend himself. However, the disciplinary hearing officer did not make any finding whatsoever with regard to his claim of self-defense and found him guilty of violating the regulation. As I was saying, Heck v. Humphrey requires that with respect to a prisoner who fails to file a timely habeas corpus petition, as Mr. Simpson did, that his success in the civil suit must necessarily imply the invalidity of his underlying infraction, and here it does not because the case law is not clearly established. There isn't any firm precedent from this circuit or from the United States Supreme Court on this issue. In addition to the lack of clearly established law, the connection between Mr. Simpson's success in his civil suit and his underlying infraction is too tenuous to support application of Heck. The U.S. Supreme Court considered this issue in Wilkinson v. Dotson, where the court found that success for the 1983 plaintiffs would mean at most new parole eligibility hearings, which may or may not result in their speedier release. Similar to Wilkinson, this court would have to make two substantial assumptions to conclude that Mr. Simpson's success in his civil suit would necessarily imply his speedier release. The court would have to assume first that a jury finding for Mr. Simpson on any of his claims would necessarily mean he acted in self-defense because self-defense was not expressly before the jury in this case. Second, the court would have to assume that self-defense was actually available to Mr. Simpson as a defense to his violation of 3005C, which as we just discussed is completely uncertain. And finally, Mr. Simpson's success in his civil suit would not negate a necessary element to his underlying infraction. This is important, as the United States Supreme Court noted in Cunningham v. Gates. If a plaintiff could prevail in their 1983 action only by negating a specific element of their underlying conviction, then the suit was heck barred. Unlike the Cunningham case, a civil jury finding that Mr. Simpson acted in self-defense in this case would not negate any element of his underlying battery, nor would it invalidate any finding upon which his guilt was based. The decision-maker at Mr. Simpson's hearing was not required to find that he did not act in self-defense in order to find him guilty of violating the regulation. Furthermore, the hearing officer did not discuss the merits of Mr. Simpson's defense claim, nor did he make any specific finding regarding who initiated the altercation. A civil jury finding in the 1983 suit, therefore, that even implicated Mr. Simpson acted in self-defense or that Sergeant Thomas initiated the altercation by punching him without provocation, would not negate any element necessary for Mr. Simpson's infraction. We're down to about six minutes. For this reason, Your Honors, we would ask the Court to reverse, and I would like to defer to my co-counsel. Good morning, Your Honors, and may it please the Court. My name is Anjali Fiedler, and as my co-counsel stated, I will be limiting my discussion today to the district court's erroneous rulings in the Batson motion as well as the district court's erroneous ruling regarding Federal Rule of Evidence 609. First, with respect to Batson, after Simpson raised a presumption of Thomas' discriminatory motive in striking the sole black juror on the panel, Thomas failed to rebut the presumption with a race-neutral reason per Prong 2 of Batson, and the trial court failed to conduct a careful analysis of this articulated reason required by Prong 3 of Batson. Better life experience, right? Correct. That was the articulated reason. What's wrong with that? I'm sorry? What's wrong with that? I mean, what's wrong with saying I prefer that juror to this juror, and if you have even a quasi-legitimate reason for preferring the juror next in line? What's wrong with that? Correct. The United States Supreme Court has held that the reason that the opposing party articulate need not be reasonable or plausible, but it must be genuine. And in this case, we're arguing that that reason was not genuine. It was, in fact, a pretext for a discriminatory motive. And had the trial court actually undertaken the required analysis under Prong 3 of Batson, it would have discovered that pretext for a discriminatory motive. Now, what exactly the counsel for Thompson had said in response to the presumption of discrimination that Simpson raised was that she did prefer the next juror in line, Mr. Price's life experience, because he had not only a daughter who was previously married to two inmates, but he also had an ex-son-in-law who was a corrections officer. Therefore, he would be able to see both sides of the issue and could properly weigh both sides of the equation. Now, if her definition, excuse me, of life experience is that she wanted somebody who had personal familiarity with both sides of the issue, then if the trial court had undertaken the correct comparison that it was required to take under Prong 3 of Batson, it would have discovered that none of the other impaneled jurors had that same life experience. They were all, in fact, similarly situated to the sole black juror, Ms. McReynolds, who was stricken for allegedly not having this life experience. And if that was the true, genuine reason, there was no reason to strike Ms. McReynolds as opposed to any one of the other similarly situated jurors. Well, in the motion for a new trial, we do have a statement by the judge. Defendant articulated a legitimate nondiscriminatory reason for challenging the juror in question. That's McReynolds, correct? Correct. And then the court goes into this in some detail, including footnote 2. I assume you've read it many times. What's the standard of review we apply to that? The standard of review, there's actually two standards of review. First, the standard of review applied in terms of both Prongs 1 and 2 of Batson is clear error or clearly erroneous. What prong are we dealing with now when the judge says legitimate? Well, the judge's ruling in terms of whether the reason was sufficiently race neutral would be Prong 3 of Batson, and that would be reviewed for clear error, Your Honor. So we're dealing with this for clear error? In terms of Prong 3, yes, Your Honor. That's a pretty high hurdle that you have to get over. Why is it clear error? Your Honor, we believe that it's clear error because we believe that the reason was not The reason is totally race neutral. Even if the reason is facially race neutral, the trial court would have found that reason to be a pretext for a discriminatory motive had it properly undertaken the careful scrutiny and analysis that Prong 3 of Batson requires. What about footnote 2? Ms. McReynolds, on the other hand, had no such background. The trial transcript supports Ms. Igres' claims in this regard in indicating that she indeed voiced the opinion at the time the Batson-Edmondson challenge was made that Price's life experience made his a more favorable defense juror because of his background and that of his family members. Your Honor, we argue that the trial court in undertaking that third Prong of Batson did not correctly do so because if he was to compare, if he was to accept her reason not just on his face but from his own independent findings of fact, he would have conducted the comparison not just between Ms. McReynolds and Mr. Price but also between Ms. McReynolds and the entire selection of jurors before her who were allowed on the panel, and he failed to do so. Had he done so, he would have found, as I have stated, that all of the other jurors who were selected were similarly lacking in life experience. None of them had, you know, familiarity or personal contacts with inmates or corrections officers and were therefore able to weigh the evidence in such a balanced manner as Mr. Price. Of course, if you win your other points, it doesn't make any difference because you're going to get a new trial. That's what we're hoping for, Your Honor. What about the 609 argument then? In terms of the 609 argument, Your Honor, we argue that the district court erroneously failed to exclude the evidence of Simpson's three prior felony convictions. Let's assume you're right. Why is it harmful? I mean, everybody knew what this was all about. He's in prison. Exactly, which is why that evidence was totally irrelevant and unnecessary. Why is it harmful? It's harmful and prejudicial, Your Honor, because allowing that evidence in, even just the facts which we argue was not just what was admitted, basically shows to the jury that Simpson has a long history of, you know, problems with the law with felony convictions and that he is a person who – it's basically improper character evidence that Thomas is trying to show that he is a person who will act in conformity with what he's been charged with previously. Is that the case, the way the case was argued to the jury, look, this guy's a crook, and you can infer from his lengthy background of multiple convictions that he acted in conformity with that? That's not what was explicitly stated, Your Honor, but that was the inference given, or that was the inference that the jury would have drawn, and therefore – In final argument, how were these priors used by the defense? The defense cross-examined the plaintiff Simpson extensively, and as I said, not just the facts but also the details. The question was in final – what was said in final argument? In final argument, I'm sorry. I'm not exactly aware of what was said specifically with respect to those felony convictions, but the overall impression that the jury came away with as a result of the cross-examination in terms of, you know, all the prior felony convictions was that, like I said, he was a person who was not to be trusted, and even though they had no relevance or bearing whatsoever on his 1983 civil rights action for excessive force, they were still allowed in as – Was the jury told why he was in prison? I believe so, yes. And what was that reason? His commitment offense was second-degree armed robbery. And how is that all that different from the other convictions? Well, the other convictions, the three other convictions that were all prior to – none of which involved a cedars dishonesty and therefore should have been excluded under Federal Rules of Evidence 609A2. The first one was for burglary, and the second and third one were drug charges. As I've said, none of which have bearing upon a civil rights action for excessive force. But the worst charge was the one he was in prison on then. Correct, the commitment offense, which should have come in and did come in and was allowed to come in under 609. We are not disputing the commitment offense and the evidence of that. We are disputing the first three, the evidence of the first three felony convictions. How do we know it was harmful? I mean, in this context. Well, we're arguing that it's harmful, Your Honor, because as we have stated, it kind of shows to the jury this image of Simpson as this very violent person who, you know, if this is a case involving excessive force of a battery between a corrections officer and an inmate – it was burglary and drugs. It wasn't violent convictions, were they? Yes, Your Honor. However, a jury might see a burglary as a violent act and might extrapolate that conviction to the prior. But you're using all kinds of words like might. You know, isn't that just speculation? Don't you have to demonstrate somehow this was harmful? Well, we do believe that it actually did impact the juror's opinion of plaintiff Simpson. How do we know that? Well, that coupled with the evidence that he was not able to bring in regarding his acting in self-defense kind of presents this one-sided picture to the jury that he is a violent person and that, you know, basically this was a one-sided attack of Simpson against Thomas. Excuse me. And even if it is considered a harmless error, we would argue under the doctrine of cumulative error that this error, in conjunction with the Batson error as well as the Heck error, constitute harmful error. And the trial court failed to do the appropriate balancing task required under Rule 609 to allow in these convictions. He should have weighed the probative versus prejudicial value for each conviction and made specific findings of fact saying that these were more probative than prejudicial, which he did not do. The only reasons he stated for allowing in these convictions were, number one, that under the three-strikes law these prior convictions did not wash out. And, number two, we do not believe that is correct. We do not believe that the three-strikes law, which is a sentencing law, have any bearing upon his conviction or release in terms of his present commitment offense. Do you have any authority for the proposition that because they've, even though they've been re-upped in terms of this commitment, that they can't be used? In terms of the three-strikes law, Your Honor, I don't believe that's been brought before the court. And second, the second reason that the trial court articulated for allowing in the evidence of the prior felony convictions was that in terms of prisoner classification, how an inmate is processed through a corrections facility, it depends upon what he's been prior, what his prior convictions were for and whatnot. And we also don't view this as relevant whatsoever in terms of his present commitment offense. You're over your time at present, but we'll give you some time for rebuttal. Thank you, counsel. We'll hear from the government. Good morning. May it please the court, my name is Misha Igra. I'm a deputy attorney general, and I represent Sergeant Thomas. The jury's considered verdict should not be disturbed in this case for three reasons. First, the court committed no reversible error because it correctly applied the law. Jury selection was not racially biased, and there was no abuse of discretion with regard to admission or exclusion of evidence. Second, plaintiff attempts to blame the court for the results of his own actions or inaction, including failing to timely seek habeas relief, bringing a meritless claim of racial bias, consenting to admission of evidence regarding his current incarceration, and moving to exclude Sergeant Thomas' expert witness, which was not discussed by plaintiffs. Third, the jury's verdict is supported by substantial evidence where plaintiffs. Why would an exclusion motion cause any of this? You're losing me. I didn't understand your last point. Yes. Plaintiff moved to exclude Sergeant Thomas' expert witness and complains on appeal that that shut his rebuttal witness out of court. But it was a tactical move by Simpson knowing. All right. And, again, where the jury's verdict is supported, where plaintiff had the burden of proof at trial, he was contradicted by his own witnesses. Starting with the heck issue? Yes. So let's just jump ahead, because I think that, at least to my way of thinking, the heck issue is important and the exclusion of or the admission of the prior old felonies are important issues. So if you don't mind starting with that. Absolutely, Your Honor. Thank you. Plaintiff accuses the court of committing reversible error in applying Heck v. Humphrey, but the bottom line is plaintiff didn't do what he needed to do when he needed to do it. Now, plaintiff has changed his position since trial. Before trial, the court specifically inquired whether Simpson intended to revisit whether he committed the battery. And in response, he said, absolutely, Your Honor, Simpson did not assault Sergeant Thomas, and he needs to be able to come into court and say he didn't do that. Now, that necessarily would have invalidated the finding that he did, in fact, batter Sergeant Thomas, and his sentence was lengthened by 150 days as a result. What's your position on self-defense? Is that a defense to this administrative finding? Well, Your Honor, as the record shows, self-defense was asserted by Mr. Simpson. Right, but is it your position that self-defense is a legal defense to an accused violation of this administrative regulation? Your Honor, it is a defense. And what's your source of that? Well, Penal Code Section 242, which is referenced by Title 15, Section 3005C, provides that a battery is an unlawful use of force against another. Well, self-defense is a privilege which negates the existence of an assault. The actions are not unlawful if they are privileged. Now, if Simpson felt that self-defense was not adequately considered in the prison disciplinary proceeding, then his remedy was to seek habeas corpus relief, alleging due process violations. And, in fact, he did do that, but he did it years too late. Why is self-defense a complete defense? Because a battery is an unlawful use. No, but if you use excessive, you're only privileged to use necessary force in self-defense. It's not a complete defense. Well, Your Honor, again, Simpson sought to come into court and say the attack never happened, that he only acted in self-defense and did not batter Sergeant Thomas, and that is specifically what Heck prescribes. Do you think that if we issued an opinion that sustained your position that it's going to be greeted warmly by prison officials? In other words, what you're asking us to do is a fairly profound thing. You're asking us to say self-defense, that an inmate has a right to assert self-defense in administrative proceedings. Your Honor, we are not asking the court to address that because that would be appropriate. No, we have to necessarily make that finding in order for you to prevail on your Heck issue. I just want to make sure you've considered that. Yes, Your Honor. Your Honor, again, if Simpson intended to make a claim based on a theory that he did not do what he was found guilty of doing and he did not seek habeas corpus relief to invalidate that finding of guilt, again, Heck is not a limitation on the court. Heck is a limitation on plaintiff and what claims plaintiff may bring. Which segues nicely into my next question. What's your best case out of this circuit that says that Heck may be applied in an evidentiary context? Well, as the court acknowledged in excerpts of Record 137, because the claim is barred, any evidence relevant, any evidence as to that claim is not relevant. In Cunningham v. Gates, for instance, from this circuit, the issue before the Ninth Circuit was whether his claims were barred because his theories would call into question the validity of the state convictions. And similar to this case. We did not, in Cunningham, sustain an evidentiary exclusion. We said the claims were barred. That's correct. And these claims weren't barred. Well, Your Honor, as the court ruled, the theory that he did not commit the battery was barred and, therefore, any evidence that he did not commit battery was not relevant to the issues before the court. The court correctly limited the argument to what happened in response to the excessive force, as cases have held as appropriate, because that would not necessarily invalidate the finding that he had battered Sergeant Thomas. Regarding bias in jury selection. In Batson v. Kentucky, the Supreme Court said that a defendant has no right to a pettit jury composed in whole or in part of people of his own race. What they have a right to is a jury composed of people who are selected pursuant to nondiscriminatory criteria. And that's exactly what happened in this case. Plaintiff would have you skip the first step of the Batson analysis, but the court carefully laid out a carefully crafted three-part test for when there is, for ferreting out whether there has been racial bias in jury selection. In step one, the court considers all the relevant circumstances, including whether there's been a pattern of strikes. And in this case, there was no pattern. Defendant challenged. Well, how could there be a pattern? There's only one black juror. Well, at the time. I mean, seriously. Well, Your Honor. How could you ever establish a pattern if you only have one black juror? Well, the jury pool was randomly selected, and there were very many African-Americans in the jury pool. But once there were excusals for hardship, challenges for cause, and five out of six peremptory challenges, she happened to be the only one remaining there. But Batson doesn't provide that the striking of one black juror is sufficient. So I can tell a judge, you see that juror number five? He's black. I'm striking him because he's black. And you can't lay a glove on me because it's not a pattern. Absolutely not. So the pattern is irrelevant to a certain extent. Well, if there's a pattern, then that would raise a prima facie case. Now, the court can also consider the relevant circumstances, including the fact that there were many more African-American candidates in the pool, and it was luck of the draw that at that moment there was one Asian, one black, and a bunch of whites sitting there. Had there been other African-American jurors in the box along the way? Yes, an African-American juror was excused for hardship early on. Now, Ms. McReynolds would not have been in the box. So that's usually something that happens right away. The judge says anybody can't sit in this case because of hardship. Somebody puts up a hand and says, me, boom, you're out of there. Now we're going to start with the real selection process. Yes, the court did hear hardship challenges, took them under consideration, and then ruled on them subsequently. Not many people had to be excused for hardship. I'm having the same problem, Judge Thomas, is if you only have one black juror, you're telling us you can never use Batson. Even if I deliberately am throwing off as one of the lawyers, that person becomes a racist. Absolutely not. That would take you to step two of the Batson analysis, which is, is there a race-neutral reason for excluding this juror? And unless there's a discriminatory intent inherent in the explanation, it will be deemed race-neutral. Now, once the race-neutral explanation was tendered and defendant did tender a race-neutral reason, under Snyder v. Louisiana, one may go to a side-by-side comparison of the jurors, and even if the court went there. The evidence is that Ms. McReynolds responded to the court's voir dire, to the questionnaire on the little blue card from the court, that she had no military, no teaching, no correctional law, no law enforcement, and no jury experience. And everyone else in the box did. The court commented at trial that he found it patently offensive to think that Ms. McReynolds would vote one way or another simply based on her race. But that being said, for the sake of argument, he asked for the reason, and a reason which was race-neutral was tendered. I prefer the next juror. But that struck me as sort of an odd reason to credit. And even accepting that you really want the next juror on the box, the next juror really doesn't count in this analysis, does it? Well, once you get to the third step of the analysis, that's true. But, again, plaintiff had not made a prima facie case at the first step. Well, assuming hypothetically that we disagree with you on that, that the prima facie case has been made, then let's go to step three. Yes. So once a race-neutral. Are you entitled to say I don't have to give a reason for excluding the black juror because I prefer the white juror? Well, Your Honor, as reflected at the sidebar discussion, I believe it's at excerpts of record page 111, defendant said it was a choice by us to get the most appropriate jury for this particular case. Ms. McReynolds had no life experience relevant to the case, and everyone else in the box did. Now, that is a race-neutral reason. She had no military experience, no jury experience, which had nothing to do with the color of her skin. Now, at step three, the court evaluates the credibility and the demeanor of the attorneys at trial, and that's why we have a clear error standard. This court, as a practical matter, cannot step back in time and step into that courtroom. But Judge Englund was there. I was there. Mr. White was there. The court was able to observe the demeanor of the attorneys, their credibility, their tenor, and their tone. And he found not only in ruling on the Batson challenge the first time around, but again on the motion for a new trial, that there had been no prima facie case of race discrimination proven by plaintiff. Plaintiff had the burden of proving racial discrimination, and it simply was not shown. You know, the life experience that you cited at the time did not involve prior jury experience, correct? Correct. That wasn't the reason given to the judge? Yes. The reason was daughter married to inmates and an ex-son-in-law at CMF, which I assume is a correctional facility here? Yes. Okay. So it's not his experience. It's experience vicariously through his daughter and ex-son-in-law. And his current son-in-law, who was an inmate. He had an ex-son-in-law outside his bars. Right, but you didn't say that at the time. Yes. I believe I said there was an ex-son-in-law who had worked at CMF and an ex-son-in-law who was an inmate. So in his family, he had people on both sides of the bars. And for that reason... And what other jurors had that experience? That particular experience, none. However, in creating a juror profile for this particular case on the facts of this case, I sought jurors with prior jury experience, military, teaching, correctional law, law enforcement experience, and everyone else had that. Now, I had to exclude... Those reasons weren't given to the judge at the time. No, but one person did need to be excluded in order to seat Mr. Price. And Ms. McReynolds had none of the experience sought. Now, again, this court must find that the court committed clear error to overturn its Batson challenge. And the court, again, was able to determine the credibility of the parties. And he found it patently offensive to think that Ms. McReynolds would vote one way or another. But the reasoning given by plaintiff at the time of the Batson challenge is, let the record reflect that she's African-American, and there can be no other reason why this defendant wants to strike this juror. But that ignores her responses to the court's voir dire, in which she admitted that she had no relevant life experience. You have another issue, the Rule 609 problem with the prior felon issues for impeachment purposes. How do you get around Rule 609? Well, I'll point out, appellant's reply brief indicates that Rule 609 makes no allowance for admitting only the facts. But that ignores that plaintiff's motion in limine did permit that. Plaintiff's motion in limine at excerpts of Record 179 and 180, Simpson specifically requested that defendants be limited to talking about the offense, the court, the date of conviction, and the sentence for his current incarceration. It would have been misleading to tell the jury that he was currently incarcerated only for armed robbery. He was given an 18-year sentence, five of which were for armed robbery, 13 of which were for other crimes, and he admitted this on the stand. So when defendant was able to ask him what he was currently convicted for, defendant asked, you are also serving time imposed for other felonies, to which he answered yes, and only those felonies were brought out, and plaintiff consented to that in his motion in limine. In addition, even if this court were to determine that it was an abuse of discretion to permit that in, it doesn't change that plaintiff was lacking necessary elements of his case. He contradicted his own witnesses, he was impeached with his own testimony, and he admitted that he didn't know how, where, or when he was injured. Well, are you ñ I'm sitting here listening to you telling me that the other side put in the prior convictions. No, Your Honor. Their motion in limine requested that the court limit defendants to talking only about the offense, the court, the date of conviction, and the sentence for his current incarceration. Now, they talk about his commitment offense, that is ñ Well, what happened with the jury? What got into evidence? What got into evidence was that he was currently incarcerated for armed robbery, that that armed robbery ñ that his current sentence includes time imposed for prior felonies, including possession of drugs. Was he asked that on direct by his attorneys? No, he was asked on cross-examination by defendants, and he indicated his prior felonies. Now, no details of his crimes were admitted into evidence. We don't have a 403 issue, and the court did ñ You know, I'm getting really confused. You used a bunch of priors that 609 on the face of it suggests should not have been used. To the contrary, Your Honor. 609 provides that convictions for crimes where the punishment is incarceration for a year or more are relevant to impeach credibility and shall be admitted subject to 403. And those ñ Let's take 10 years old. Your Honor, it provides that the conviction or the release from the incarceration is 10 years or more. Simpson is still currently serving time imposed for those prior felonies. You're not ñ you're not ñ Enhancement? Is that what your argument is? That they enhanced his conviction, not sentenced him, right? That, as the court commented, those strikes don't wash out. In other words, he can still be sentenced. Well, you're misquoting the language of the statute. 609B says, excludes evidence of a conviction if it's been more than 10 years, quote, since the date of the conviction or the release of the witness from the confinement imposed for that conviction. Yes. This is ñ so I think on the face of it, your argument doesn't wash, that you can re-up these things because they enhance the punishment, especially since ñ because we said in Kelowna that the enhanced punishment imposed for the later offense is not to be viewed as either a new jeopardy or an additional penalty for the earlier crimes, but instead a stiffened penalty for the latest crime. Well, as the court commented, where the strikes don't wash out, time can still be imposed for those strikes. It would have misled the jury to say he's serving 18 years for armed robbery. That's not the case. It's not misleading the jury. He is serving ñ when he was sentenced, he was sentenced to five years for armed robbery. Five years for ñ And his sentence was enhanced. What? And then his sentence was enhanced because of the priors. And he is serving additional time because of those priors. But his conviction, the time ñ well. So you have a 609 exception when the sentence is used to enhance the current sentence. You're reading that into the language here. Believe me, I work in a court mostly that has one judge at the bench, and I don't particularly like circuit courts to make more hoops to jump through. But still, aren't you adding some additional language to 609 here? I don't believe so, Your Honor. I believe that Mr. Simpson is still serving time because of those prior felonies. What's your best case that says that? I'm sorry, Your Honor. I didn't quote my cases in my notes, but I believe they are in my brief. Okay. The language says, ìFor the release of the witness from the confinement imposed for that conviction.î Yes. And the confinement imposed for that conviction had long since run. Well, 13 years are currently being served through those prior convictions. Wow. Assume that 609 was stepped on here. Does the other side need to show more? Do they need to show some prejudice here? Yes, Your Honor. Even if it was error to introduce this evidence, the error was harmless. Plaintiff claims that these felonies so infected the jurors' minds that they made them predisposed not to believe Simpson. But even if the jury did believe everything that Simpson said, he was still contradicted by his witnesses, he still was impeached by his deposition, and he admitted the absence of necessary elements of his case. So even wereó Okay. What do you mean he admitted the absence ofó So his side got up and said, ìGuess what. We haven't proved our case.î Well, Simpson admitted on the stand that he didn't know how, where, or when he sustained his injuries. He admitted at deposition long before trial that Sergeant Thomas acted in self-defense the whole time they were in the cell, that they bumped into the locker, that they bumped into the bunk. And he's not sure how he got his bloody nose. So the issues of a causal link between the actions, the intentional actions of Sergeant Thomasó He said under oath during the trial, ìThe officer was acting appropriately while he was in my cell.î Yes, at supplemental excerpts of Record 178 to 182, where Simpson is cross-examined, he admitsó Okay. At page 178, beginning at line 10ó This is 178 of the what again? Supplemental excerpts of Recordó Supplemental, okay. 178 at line 10. Question. ìIn the whole time you were holding Sergeant Thomas by the neck, he was trying to defend himself, wasn't he? Objection. Speculation. Overruled.î Question. ìI'd like to refer to Mr. Simpson's deposition transcript you're on. Page 21, line 21 through page 22, line 6. I'd like toó What is the purpose? Well, in the deposition transcript on line 3 of page 22, Mr. Simpson describes what Mr. Thomas was doing. Line 3. Objection. No. What he saidóthe court. No. What he said was, ìWhile you're on top of Sergeant Thomas, you're holding by the neck.î Is that correct? Yes. ìAnd the whole time you were holding Sergeant Thomas by the neck, he was trying to defend himself, wasn't he?î There was an objection, but there's been no response. So before I go to this, I'll need to hear what he's going to say to your question. Moving down. Again, there's a colloquy between counsel and court. 10. ìOverruled. And the whole time you were holding him by the neck, he was trying to defend himself, wasn't he?î The witness. ìNot the whole time.î Mr. Carrasco, may I read from the deposition transcript? He just impeached him. I mean, he's denying anyó But then follow up. ìAfter he was impeached with his deposition transcript, where he admitted that in the cell he was defending himself. Following the end of the reading at supplemental excerpts of Record 117, Line 24, a follow-up question after he was impeached with his deposition. ìNow, Sergeant Thomas struck you in your cell only to defend himself. Isn't that true?î ìAnswer. Struck me in the cell only to defend himself?î ìQuestion. Yes.î ìAnswer. Yes.î ìThe court found that he was struck in the cell only when Sergeant Thomas was defending himself. And the court fully evaluated whether or not he was struck outside the cell following the altercation. But Simpson admitted that inside the cell, Sergeant Thomas struck him only to defend himself.î From the choking on the neck? ìWell, first, they were asked, ìDid he strike you only to defend himself while you were holding him by the neck?î ìThe court was asked, ìDid he strike you in the cell only to defend himself?î ìAnd the answer was yes.î It's hard to see how the case blows up on that. I mean, it's certainly an argument to the jury to be made. But if you combine that with the heck issue, what he doesn't get to say is, ìHe hit me first.î ìWell, Simpson also admitted thatÖî So you tried to tell us that he admitted that his case was deficient. And that doesn't ñ that's no admission that my case is deficient. Not that standing alone. However, where he admitted that he didn't know how or where he sustained his injuries, but he knew that he had bumped into the bunk and the locker during the struggle. There's no causal link between what Sergeant Thomas did and his injuries. He was unable toÖ He doesn't know at what point in the fight he sustained the injuries. He didn't sustain it later. He didn't have them before the sheet incident. He didn't sustain them in the infirmary. Correct. He's unable to say at what precise point during this altercation he was injured. Yes. And under Heck v. Humphrey, what happened after he battered Sergeant Thomas was an appropriate inquiry for the court. And the jury found that Sergeant Thomas had not attacked Simpson. So let's return to where we started in this question. What was your point in putting on the 609 evidence? What were you trying to accomplish in cross-examination? Well, againÖ Trying to show he was a bad guy, weren't you? No. The state of mind of Sergeant Thomas was relevant. What he did and why he did it wasÖ But you didn't ask Sergeant Thomas that. You asked the defendant. Yes. We established that defendant was currently incarcerated for several felonies, which would go to the state of mind of Sergeant Thomas in his responses to Simpson. Why? Did you make the record that Thomas knew about those? Yes. Well, and the court commented on that, that the prior felonies were a factor in where he was housed and how he was housed and his security level. Sergeant Thomas commented that that wing on the third floor at the administrative segregation unit, someone had escaped from that very same wing. And if someone like that can get out from the third floor, then Mr. Simpson, who's on the first floor, you need to be very careful when they're covering their windows, and that it caused him to grow more suspicious and leery when Simpson refused to remove his window covering. But you can get that evidence in without exploring how many felonies he has, right? He was in a special unit where he had to take precautions. That was the relevant. What he was convicted of has really no relevance to that, does it? Well, again, Your Honor, under 609A1, evidence of a conviction for which the imprisonment is more than a year shall be admitted subject to a 403 balancing test. And so in this case, the court properly admitted that evidence. Well, if we disagree with your interpretation of 609, where does that leave me? Well, Your Honor, still, any error with regard to 609 is harmless in this case. Plaintiff may speculate. The fact was you were really trying to show that this was an untrustworthy, violent guy, weren't you, when you tried to put in all these felonies? No, Your Honor. This did not come in for propensity evidence. None of the prior felonies, again, had to do with violence except for his armed robbery, which Simpson's counsel conceded could come into trial. What was your point? I still don't understand the point of doing it except to prejudice the jury. And that's, you know, people, evidence is prejudicial. That's how it cuts. I'm not using prejudice in a necessarily bad way, but that was why you were trying to get the convictions in, wasn't it? It was Plaintiff's burden to show that Sergeant Thomas acted maliciously and sadistically for the very purpose of causing harm. And if there is a valid penological justification for his actions, then his actions are protected. And given Simpson's prior felony convictions and where he was housed, this goes to whether Sergeant Thomas reasonably believed that he had a valid penological justification for his conduct. So what's the probative value of these convictions, that it shows the officer's state of mind? Well, it does show what Sergeant Thomas was facing during the incident and what conduct may be reasonable under the circumstances. Did he know about these three priors that had enhanced the sentence? Well, yes, by virtue of Simpson being placed on the P1 unit. He didn't know about these priors. He just knew that it was a long sentence. That he had been sentenced for a long time. Correct. He didn't know about the three priors that were used to enhance? No, but without those three priors, Simpson would have been out by 2001 before this incident occurred. So is it your argument that an officer is privileged to use excessive force against an inmate if he has more priors? That the more priors you have, the more privileged he is to use excessive force? No, Your Honor. But in evaluating whether Sergeant Thomas' conduct arises to a constitutional violation for excessive force, one must evaluate whether his conduct, whether the harm, the supposed harm caused, was inflicted sadistically and maliciously for the purpose of causing harm. And that's an adequate inquiry into whether, under the circumstances where he is faced with an inmate in a cell who is refusing direct orders, was his conduct reasonable under the circumstances. And where it is reasonable, then there is no excessive force. There's no constitutional violation. Now, I note that I am out of time, unless the Court has any further questions. Thank you for your argument. Thank you. And we will give each of you two minutes for rebuttal. All right. I would like to respond to a couple of points made by defendants' counsel regarding Heck v. Humphrey. First, Hold on one second. Sure. Could you put on two minutes, please? Thank you. Thank you. First, counsel noted that the plaintiff didn't file a timely habeas corpus petition, which we do not contest in this case. And she noted that trial counsel specifically stated that when asked that he intended to relitigate, essentially, the assault. While that is in the record and the trial court may have stated that, trial court was obviously aware that that was actually impossible. This was a civil case where it's not even possible to relitigate the outcome of a prison disciplinary proceeding. Furthermore, and I've worked extensively with trial counsel during this process, and trial counsel noted that the reason that he wanted Mr. Simpson to be able to come in and say, yes, I acted in self-defense, I was just defending myself, was to show exactly how excessive the force that Sergeant Thomas used was, that he namely initiated the altercation by punching Mr. Simpson without provocation. The defense in the prison disciplinary hearing was self-defense, wasn't it? Yes, Mr. Simpson did make a statement that he was acting to defend himself. So he was permitted to use that defense and it failed? Well, Your Honor, we are He said we're not going to let you use that defense, it's not available in a prison disciplinary hearing. No, Your Honor, nobody said that explicitly. It was litigated then if he tried to use it and it didn't work. Well, Your Honor Now he's trying to imply the invalidity of the conviction where he failed with his self-defense claim. Your Honor, as I noted before, the case law isn't clearly established on whether he could actually raise a defense. And as you correctly noted, the prison disciplinary proceeding officer did not say that he couldn't raise it. But he didn't make any finding whatsoever on the merits of that defense. So we are uncertain as to why exactly It's implied. I mean, he said to self-defense. Nobody said you can't use that. They heard the case and he said it doesn't work. You're convicted of battery. Yes, Your Honor. But on the other hand, he could have just not mentioned it and not allowed it to affect the outcome of the proceeding because it's not available at all. And we're uncertain as to exactly why the officer didn't listen to Mr. Simpson's claim of self-defense and didn't take it into account. Furthermore, counsel noted that California Code of Regulations 3005C is based in the California Penal Code, Section 242. And as she noted in her brief as well, that self-defense is a privilege which negates an assault. However, a privilege that exists in criminal law or in civil law has no bearing, we maintain, on a prison disciplinary proceeding. It cross-references 242. It does cross-reference it, Your Honor. However, the needs of a prison to maintain order in the prison and to ensure the safety of both the officers and the other inmates demand that the standards are a bit different. I find this very curious. I mean, the state is arguing that, sure, prisoners can use self-defense. They're basically, you know, and you on behalf of your client are saying, you know, that you can't use self-defense if this ever happens again. You're not privileged to. I understand. I understand. You're asking us to write an opinion wiping out the right of any prisoner to exercise self-defense in a prison context? Your Honor, that isn't even necessary in this case. All that Heck requires is that the prisoner's success in his civil suit necessarily implies the invalidity of the underlying conviction. This conviction. Of this infraction, yes. And at this time, though. I'm not getting precisely what was litigated in this disciplinary proceeding. Yes, Your Honor. But at this time, the law is undecided in this area. I understand that it is peculiar for us to be saying, well, prisoners don't have a right to self-defense. But we don't know. And we're just going by the law. So your argument is, one, it's not necessarily, and two, there's no finding of self-defense. So there's no finding at issue that would be implicated by Heck. Yes, Your Honor. And their best argument is it's implicit because he asserted it and it was rejected. I suppose so. For reasons we don't know. Yes, I suppose so, Your Honor. Furthermore, with respect to Heck, counsel was responding to the question of whether it should be an evidentiary doctrine. And counsel noted that evidence that Mr. Thomas or, excuse me, Mr. Simpson didn't commit a battery isn't relevant. But that wasn't the evidence that was at issue here. We're discussing the evidence that Sergeant Thomas initiated this altercation by punching Mr. Simpson without provocation. So that is the relevant evidence here. And that's something that the jury was entitled to hear in order to make an informed decision about this case. Thank you, counsel. If there are no further questions, thank you. Would you like to use your two minutes? Yeah. Your Honors, if I may respond to the Batson and 609 arguments that were raised by Thomas. First of all, with the argument that we did not address the prima facie case, we do not believe, first of all, that this is even a relevant point anymore. Under the case of Hernandez v. New York, a United States Supreme Court case, that case held that once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether a defendant has made a prima facie showing becomes moot. In this case, not only did Thomas articulate a supposedly race-neutral reason or proffer a race-neutral reason, but the trial court also did make a ruling both immediately after, during the sidebar conference, and following a short recess on the Batson motion. Therefore, under Hernandez v. New York, the issue of whether a prima facie case has been established is moot. Even assuming arguendo that it's not moot, the United States Supreme Court, as well as this circuit in the case of Boyd v. Newland, has repeatedly held that the threshold for establishing a prima facie case is not onerous and it's quite low. Therefore, under the three prongs of the first step in Batson for establishing a prima facie case, Simpson clearly did establish a presumption of discriminatory intent, which Thomas failed to rebut. Now, moving on to the question of whether there was a pattern established, as Your Honors have rightly pointed out, there wasn't a pattern that could have been established because there was only one black juror available on the panel to be stricken by Thomas, and she was. Now, and also under the case of Millerall v. Dredke, as well as Snyder v. Louisiana, the Court has held that the moving party does not need to establish a pattern. It may be circumstantial evidence of discriminatory intent, but it is not required. Moving on to the 609 arguments that Thomas raised, or that Thomas responded to, she said that Simpson had said that only the fact, or that just the facts, would be admissible. Now, I don't believe that Simpson has ever said that in the motion in limine. I believe what he was saying was that if the trial court was going to allow evidence of the prior felony convictions, he would ask the court to limit it to just the facts. He initially did state, however, that he wanted those felony convictions, the evidence of those prior felony convictions, to be excluded under 609. What happened to the motion in limine? It was not granted. I mean, Thomas' response to the motion was, in fact, what the trial court went on by saying he believed that the evidence would be admissible because it was more probative and that the convictions did not wash out under the three-strikes law. Now, as we have stated, we do not believe that his reasons for allowing that evidence, namely the three-strikes law doesn't permit these prior felony convictions to wash out, and also the prison classification system is relevant at all to determining whether those previous felony convictions were more probative than prejudicial. And we would hold that they are more prejudicial than probative because the only reason that trial counsel could have possibly had in mind when she brought forth the evidence of those felony convictions was to show improper character evidence and conformity therewith, namely the fact that he is not a law-abiding citizen, that he is prone to break the law, and in the case of a burglary conviction, that he would be a violent person. Thank you, counsel. Thank you very much. You have a little over your time now. Thank you both for your arguments. The case just heard will be submitted and will be in recess for the morning.
judges: Trott, Thomas, Hogan